**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HUGH AUDRIE CARTER, | § | |
| (TDCJ-CID #1905284) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-0276 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Texas state inmate Hugh Audrie Carter filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2014 state-court convictions for aggravated robbery. The respondent, Lorie Davis, has answered and moved for summary judgment. (Docket Entry No. 14). Carter has not responded. Based on careful consideration of the pleadings, the motion, the record, and the applicable law, this court concludes that Carter has not stated meritorious grounds for federal habeas relief, denies his § 2254 petition, and, by separate order, enters final judgment. The reasons are explained below.

## I.      Background and Claims

Carter pleaded guilty to two counts of aggravated robbery with a deadly weapon, without a sentence recommendation, and was convicted in a Harris County, Texas court, in Cause Numbers 1366763 and 1367859. In January 2014, after a presentence investigation and punishment hearing, the trial court sentenced Carter to concurrent sentences of life imprisonment in the Texas Department of Criminal Justice for each offense.

The Fourteenth Court of Appeals of Texas affirmed Carter's convictions and sentences in October 2014. *Carter v. State*, Nos. 14–14–00060–CR and 14–14–00061–CR, 2014 WL 5780691

(Tex. App.—Houston [14th Dist.] 2014) (mem. op.). The Texas Court of Criminal Appeals refused discretionary review in January 2015. *Carter v. State*, Nos. PD–1548–14 and PD–1549–14 (Tex. Crim. App. Jan. 14, 2015). Carter filed two applications for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, challenging each of his convictions. The Court of Criminal Appeals denied those applications without a hearing or written order, on the findings of the trial court, in January 2016. *Ex parte Carter*, Application Nos. 83,923-01 and 83,923-02.

Carter filed this federal petition in December 2016. He raises the following grounds for federal habeas relief:

1.     Ineffective assistance of trial counsel, who:

    a.     had a conflict of interest;

    b.     failed to investigate the case and file pretrial motions; and

    c.     failed to file a motion to sever the two causes.

2.     Involuntary guilty plea as a result of trial counsel's ineffectiveness.

3.     Trial-court error in failing to inquire into the conflict of interest.

4.     Ineffective assistance of appellate counsel, who:

    a.     failed to raise the issue of trial counsel's conflict of interest; and

    b.     denied him the right to counsel by filing a motion to withdraw.

5.     Breach of the plea agreement in that the State failed to fulfill its promise of a 50-year sentence cap.

(Docket Entry No. 1, at 6–7, 11). The respondent argues that Carter's claims are unexhausted, procedurally barred, waived, or without merit. (Docket Entry No. 14). Each claim and argument is analyzed against the record and the applicable legal standards.

## II.     The Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it involves materially indistinguishable facts and arrives at a different result. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a different and inappropriate context, or unreasonably refuses to extend that principle to a context to which it should apply. *Williams*, 529 U.S. at 409. The issue is whether the state court's application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As the Supreme Court stated in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

AEDPA requires federal habeas courts to defer to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a state-court decision on the merits based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court presumes the state court's factual determination to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express fact findings, but also to implicit findings. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). "The presumption is especially strong when the state habeas court and the trial court are one in the same[,]" as they were in this case. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (collecting cases); *see also Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts.").

Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, a court on summary judgment must view the evidence through "the prism of the substantive evidentiary burden."

*Anderson*, 477 U.S. at 254. Congress, through AEDPA, has constricted both the nature and availability of habeas review. This court applies general summary judgment standards to the extent they do not conflict with the AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Carter is representing himself. Self-represented habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Carter's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III. Discussion

### A. The Unexhausted and Procedurally Barred Claims

Carter raises several of his claims in federal court for the first time. The claims not previously raised include that: (1) trial counsel was ineffective for failing to file a motion to sever the two causes; (2) appellate counsel was ineffective for failing to raise the issue of trial counsel's conflict of interest; (3) appellate counsel was ineffective for moving to withdraw as counsel; and (4) the State breached the plea agreement by failing to fulfill its promise of a 50-year cap on the sentence.

A federal court may not grant habeas corpus relief on behalf of a person in state custody unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other

words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). To satisfy this requirement, a claim must be "fairly presented" to the state's highest court for review. *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999) (citing *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1984)). The doctrine of exhaustion "require[s] a state prisoner to present the state courts with the *same claim* he urges upon the federal courts." *Wilder v. Cockrell*, 274 F.3d 255, 261 (5th Cir. 2001) (quoting *Picard v. Conner*, 404 U.S. 270, 276 (1971)) (emphasis in the original).

The record confirms that Carter did not raise the three claims of ineffective assistance or the claim that the State breached the plea agreement in his direct appeal or in a properly filed state habeas application. He did not exhaust his available state court remedies as to these claims. The respondent argues that these unexhausted claims are procedurally defaulted because the state court would now find them procedurally barred.

"[I]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000) (citations omitted). Carter's unexhausted claims could have been raised in his state habeas corpus applications. A successive petition raising these claims in state court would be barred by the Texas abuse-of-the-writ statute. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a). This default is an adequate state procedural ground to bar state, and therefore federal, review of the unexhausted claims, unless an exception applies. *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

To show an exception for federal habeas review, a petitioner who has procedurally defaulted a claim in state court must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). A claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). A petitioner seeking to overcome a procedural default by showing "actual innocence" must support his allegations with new, reliable evidence that was not presented at trial. The petitioner must show that it is more likely than not that, in light of the new evidence, no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). Carter does not present new evidence or demonstrate a viable actual-innocence claim under *Schlup*. He does not argue, let alone demonstrate, cause for his default. Absent a showing of cause, a court need not consider whether there is actual prejudice. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992) (citations omitted).

Procedural default bars Carter's claims that trial counsel was ineffective for failing to file a motion to sever, and that appellate counsel was ineffective for failing to raise trial counsel's conflict of interest and for withdrawing as counsel. Procedural default also bars the claim that the State breached the plea agreement by failing to fulfill its promise of a 50-year sentencing cap.

Carter's remaining claims—(1) ineffective assistance of trial counsel; (2) involuntary guilty plea; and (3) trial-court error—are analyzed on the merits.

**B.     Carter's Remaining Claims**

In several grounds for relief, Carter alleges that ineffective assistance of trial counsel made his guilty plea involuntary. Carter claims that a conflict of interest developed after he moved to dismiss his counsel from further representation, and that counsel coerced him into entering his plea. Carter also faults his trial counsel for failing to investigate his case or file pretrial motions. Finally, Carter argues that the trial court abused its discretion by not inquiring into the potential conflict of interest.

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985). A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea is voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992). If the record shows that the defendant "understood the charge and its consequences," a federal habeas court will uphold a guilty plea as voluntary even if the trial judge failed to explain the offense. *Davis v. Butler*, 825 F.2d 892, 893 (5th Cir. 1987).

The record shows that on October 31, 2013, Carter appeared in open court and entered a plea of guilty in each case. The court admonished Carter, orally and in writing, as to the nature of the offenses charged — aggravated robbery, with a prior felony conviction alleged for enhancement at punishment, in each case. The court further admonished Carter that the punishment range for the offense of aggravated robbery, as enhanced, was no less than 15 years and no more than 99 years or life in prison. Carter stated on the record that he understood, and he signed documents containing these admonishments. By signing the statements contained in the plea paperwork, Carter represented to the court that he was mentally competent, that he fully understood the nature of the charges against him and the consequences of his plea, and that he entered his plea freely, knowingly, and voluntarily. Carter also signed a document in each case waiving his constitutional rights, agreeing to stipulate to the facts and to guilt, and making a confession. By his signature, Carter attested to the truth of the allegations in the indictments and confessed that he had committed the offenses, along with Genaro Tamayo, who was also charged. These documents were all reviewed and signed by trial counsel, the prosecutor, and the trial court.

These official court records "are entitled to a presumption of regularity and are accorded great evidentiary weight" on habeas corpus review. *Hobbs*, 752 F.2d at 1081–82 (citations omitted). Likewise, "[s]olemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 432 U.S. 63, 73–74 (1977)); *see also United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy."); *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this

claim, Appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity.").

During the state habeas proceedings, the trial court found that Carter had pleaded guilty "freely, voluntarily, and of his own volition." (Docket Entry No. 15-20, at 115, ¶ 38; Docket Entry No. 15-24, at 105, ¶ 39). The court further found that Carter had failed to overcome the presumption of regularity and voluntariness created by the official trial court documents. (Docket Entry No. 15-20, at 115, ¶ 39; Docket Entry No. 15-24, at 105, ¶ 40). The Texas Court of Criminal Appeals expressly based its denial of habeas relief on these findings, which are presumed correct. 28 U.S.C. § 2254(e)(1). Carter fails to present clear and convincing evidence to rebut the state court's finding that his guilty plea was voluntary. *Id.*; *see also Miller-El*, 537 U.S. at 330–31.

Carter contends that the ineffective assistance of trial counsel rendered his guilty plea involuntary. Carter states that he filed a motion to dismiss counsel "due to ineffectiveness and neglect of his case," which created a conflict of interest. Carter also contends that counsel coerced him into entering his guilty plea, despite his desire to take his cases to trial.

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the two-part test set out in *Strickland v. Washington,* 466 U.S. 668 (1984), applies to cases involving guilty pleas. A petitioner must show that: (1) his counsel's actions fell below an objective standard of reasonableness; and (2) the ineffective assistance of counsel prejudiced him. *Id.*; *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). A court may resolve a claim by finding either that counsel was reasonably effective or that there was a lack of prejudice. There is no need to reach both issues if the defendant makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court strongly presumes that it falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

In the context of a guilty plea, prejudice is present if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996) (citing *Mangum v. Hargett,* 67 F.3d 80 (5th Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996)). A reasonable probability is one that undermines confidence in the outcome. *Strickland,* 466 U.S. at 694.

Because Carter pleaded guilty, the question is whether counsel's performance interfered with his ability to understand the nature of the charges against him and the consequences of his pleas. Because the state habeas corpus court rejected Carter's ineffective-assistance claims, the issue is "whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citation omitted). A "doubly deferential" standard applies on federal habeas review. *Id.*; *see also Richter,* 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

The record fails to show that the state court's decision was unreasonable under the doubly deferential standard.

Carter first argues that a conflict of interest developed because he filed a motion to dismiss his attorney from further representation. Filing a motion to dismiss counsel does not demonstrate an actual conflict of interest. *See Morin v. Thaler*, 374 F. App'x 545, 551 (5th Cir. 2010) ( a conflict must be actual, not merely speculative, hypothetical, or potential) (citations omitted). To establish a constitutional violation on the basis of a conflict of interest, the defendant must demonstrate that an actual conflict adversely affected his counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Beets v. Collins*, 986 F.2d 1478, 1483 (5th Cir. 1993). An actual conflict is one that places defense counsel in a position of divided loyalty. *See United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005); *see also Mickens v. Taylor*, 535 U.S. 162, 171 (2002) ("an actual conflict of interest" means "precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties"). For example, "[a]n actual conflict exists if 'counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.'" *United States v. Lyons*, 703 F.2d 815, 820 (5th Cir. 1983) (quoting *Baty v. Balkcom*, 661 F.2d 391, 395 (5th Cir. 1981)). When ineffective assistance is raised, prejudice is presumed once a defendant establishes that: (1) counsel acted under the influence of an actual conflict; and (2) counsel's actions had an adverse effect upon his defense. *See United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007). An adverse effect is established with evidence of a plausible defense strategy or tactic that could have been pursued but for the actual conflict. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

Carter filed a motion to dismiss counsel and appoint new counsel on February 28, 2013. (Docket Entry No. 15-12, at 17–21; Docket Entry No. 15-13, at 16–20). He alleged that his counsel was neglecting his case and failing to provide reasonably effective assistance. *Id.* There was no ruling on the motion. Carter subsequently appeared in court with counsel on five separate occasions prior to entering his plea. (Docket Entry No. 15-12, at 49–50; Docket Entry No. 15-13, at 48–49). There is no indication that Carter made any objection in these appearances to counsel's representation. During his plea proceeding, Carter stated in writing, "I am totally satisfied with the representation given to me by my attorney," and that counsel "provided fully effective and competent representation." (Docket Entry No. 15-12, at 35, ¶ 8; Docket Entry No. 15-13, at 34, ¶ 8).

The Sixth Amendment right to counsel does not guarantee an accused a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Nor does a defendant's mere dissatisfaction or disagreement with his attorney's strategy give rise to a conflict. *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007); *Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983). Carter fails to otherwise allege or show that his attorney acted under the influence of an actual conflict or that his performance was adversely affected as a result. Absent a showing that counsel's performance was hampered by an actual conflict of interest, Carter does not demonstrate that he was denied effective assistance by conflict-free counsel or that a constitutional violation occurred.

Carter fares no better on his claim that counsel coerced him into entering a guilty plea. During the state habeas proceedings, defense counsel Kurt B. Wentz responded to Carter's allegations in an affidavit. Wentz emphasized that the "shoot-out at the Conoco robbery" was caught on camera and that both Carter and his father were known by witnesses at the store. The

affidavit continued:

Counsel spoke with the appellant on multiple occasions about the resolution of his case and the possible consequences of those resolutions. This was done at the Harris County Jail as well as in the court holdover cell. Conversations were also had with the applicant's family who participated in the sentencing phase of his case.

The applicant's own written statement that I helped prepare for the PSI and PSI hearing with his full cooperation and input evidences our discussions about the resolution of his case.

Counsel's discussion of the means of resolving the applicant's cases and their consequences is further evidenced by the testimony of his father at the hearing and the letters submitted by counsel on the applicant's behalf.

Additional proof that counsel discussed the options available to the applicant for resolving his case is provided by the "Waiver of Constitutional Rights", plea admonishments that were freely and voluntarily signed by the applicant, as well as the Court's own admonishments at the time of his plea. There was absolutely no confusion on the applicant's part as to the options available to him at the time of his plea and the consequences that followed each.

. . .

Counsel discussed and explained the plea admonishments to the applicant on multiple occasions and he fully understood the consequences of his plea and the waiver of his rights. This is best evidenced by the applicant's sentencing letter that was prepared with the assistance of counsel. The case and the applicant's rights had to have been fully discussed with Mr. Carter for counsel to be able to compose this document on his behalf. He was fully aware of its purpose as well as the purpose of the other letter submitted on his behalf.

The applicant's "Waiver of Constitutional Rights", plea admonishments, and unequivocal answers to the Court's questions at the time of his plea further demonstrate the applicant had discussed his rights with counsel and understood the consequences of waiving those rights.

. . .

Counsel never promised the applicant he would not get a life sentence and counsel never would make such a promise. Counsel does not believe that there is a criminal defense attorney in Harris County who handles serious felony cases who is not aware that a life sentence is the possible result of any PSI hearing on a serious case. The applicant mistakes my efforts to spare him from such a sentence by presenting the

testimony of his father, collecting supportive letters from family and friends, and crafting the applicant's own sentencing letter with a promise that such a sentence would not result. The applicant was fully aware he might get a life sentence when the Court explained: "That means I could give you anywhere from 15 years to life in prison, and I will consider all of it. Do you understand that?" To which the applicant responded: "Yes, sir."

(Docket Entry No. 15-20, at 88–89; Docket Entry No. 15-24, at 87–88) (internal citations omitted).

In rejecting Carter's claims on collateral review, the state habeas court explicitly found this affidavit credible. The state habeas court's findings are set out below.

7. The applicant raised the issues of ineffective assistance of counsel and involuntary plea on appeal in his *pro se* brief, which were considered and rejected by the Fourteenth Court of Appeals.

8. Kurt B. Wentz ("Wentz") represented the applicant as trial counsel in the primary case, and filed a credible affidavit in accordance with the instant proceeding.

9. Wentz met with the applicant on multiple occasions, both at the Harris County Jail, as well as in the trial court's holdover cell, and spoke with him regarding the primary case.

10. Wentz thoroughly reviewed and explained the various disposition options available to the applicant in the primary case, as well as the consequences of each option.

11. Wentz met with members of the applicant's family on multiple occasions and spoke with them regarding the applicant's case and its disposition.

12. Wentz fully and thoroughly explained the range of punishment in the primary case to the applicant.

13. Wentz did not guarantee any particular outcome in the primary case to the applicant, nor did Wentz make any promise that a life sentence was not a possible result.

14. The applicant chose to plead guilty to the trial court and to have a PSI hearing.

15. On October 31, 2013, the applicant completed plea documents in the primary case, including a plea of guilty, admonishments, and waiver of constitutional

rights, agreement to stipulate and judicial confession.

16.     In conjunction with his plea agreement in the primary case, the applicant stipulated that he committed the actions alleged in the indictment along with Genaro Tamayo.

17.     Wentz thoroughly explained and discussed the trial court's written admonishments, the plea paperwork, the consequences of the applicant's guilty plea, the PSI process, and the waiver of the applicant's rights with the applicant, before the applicant entered into the plea.

18.     Wentz had no doubt that at the time of his plea, the applicant fully understood the available disposition options in the primary case, the consequences of each option, and the applicant freely and voluntarily chose to proceed with a guilty plea to the trial court.

19.     The applicant initialed each and every written admonishment in the primary case with the letters, "HC", indicating each particular admonishment was reviewed and explained to the applicant, and that the applicant understood it.

20.     The trial court documents and reporter's record reflect that the applicant fully discussed the case with Wentz.

21.     Trial court documents and the reporter's record reflect that on October 31, 2013, the applicant appeared sane, was found competent, was admonished by the trial court as required by Texas Code of Criminal Procedure art. 26.13, and was aware of the consequences of his plea.

22.     The reporter's record from the applicant's plea to a PSI reflects the applicant's own verbal affirmation to trial court indicating he had a full understanding of the nature of his plea, the consequences of his plea, the applicable punishment range, and the PSI process; the applicant had no questions, nor expressed any concerns during the plea.

23.     The reporter's record from the applicant's plea to a PSI reflects the applicant's verbal affirmation to the trial court that no one promised or assured him what his sentence would be following the PSI hearing, and that the trial court had the full range of punishment at its disposal.

24.     After the applicant's plea of guilty, Wentz met with the applicant to prepare a statement on behalf of the applicant for inclusion in the PSI report.

25.     In December 2013, Wentz and the applicant prepared a five (5) page typed statement detailing the applicant's family background, childhood,

educational background, extracurricular activities, criminal history, hobbies, substance use, mental health history, work history, and allocution for inclusion in the PSI report.

26.    At the time Wentz and the applicant prepared the applicant's statement for the PSI report, Wentz had no doubt that the applicant understood the purpose of the sentencing statement and the reason is was being prepared for the trial court.

27.    Wentz prepared for the PSI hearing with input from the applicant and the applicant's family members, and collected character letters on behalf of the applicant which were included with the PSI report for the trial court's consideration.

28.    On January 7, 2014, the trial court held a PSI hearing.

29.    A PSI report was prepared by the Harris County Community Supervision and Corrections Department for the trial court's consideration at the hearing in assessing the applicant's punishment in the primary case; the PSI report included the applicant's five (5) page statement and character letters from his family.

30.    The applicant fails to show that any information contained in the PSI report was inadmissible, especially in light of the applicant's waiver of his constitutional rights and judicial confession to the charged offense.

31.    At the PSI hearing, Wentz presented live testimony from the applicant's father Hugh Carter, II, as mitigation evidence on behalf of the applicant.

32.    At the conclusion of the PSI hearing, despite the mitigation evidence presented by the defense, the trial court sentenced the applicant to confinement for life in the Texas Department of Criminal Justice – Institutional Division.

33.    The applicant fails to show that Wentz's conduct fell below an objective standard of reasonableness for his failure to object to any information contained in the PSI report and that, but for Wentz's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different, or that the applicant would not have pled guilty and would have insisted on having a trial.

34.    The applicant fails to identify what pretrial motions he believes Wentz should have filed, nor does he show that had Wentz filed [ ] any such motions, they would have been meritorious, granted by the trial court, and affected the

outcome of the proceeding.

35. The applicant fails to meet his burden of proving how Wentz's investigation was deficient, and showing what further investigation would have revealed, or that any further investigation would have benefit[t]ed the defense.

36. Wentz did not deny the applicant the right to have a jury trial, had the applicant so wished.

37. Wentz did not coerce the applicant to plead guilty and the applicant fails to demonstrate that he was coerced or forced by anyone or any source to plead guilty.

38. The applicant pled guilty freely, voluntarily, and of his own volition.

39. The applicant fails to overcome the presumption of regularity and voluntariness created by official trial court documents[.]

40. The applicant fails to show in all things that Wentz's conduct fell below an objective standard of reasonableness and that, but for Wentz's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different, or that the applicant would not have pled guilty and would have insisted on having a trial.

41. The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of counsel at trial.

(Docket Entry No. 15-20, at 110–16, ¶¶ 7–41; Docket Entry No. 15-24, at 99–105, ¶¶ 7–33, 35–42) (internal citations omitted). The Court of Criminal Appeals expressly based its denial of habeas relief on these findings, which are presumed correct. 28 U.S.C. § 2254(e)(1).

Carter fails to present clear and convincing evidence to rebut the state court's findings. *Id.*; *see also Miller-El*, 537 U.S. at 330–31. Carter neither offers nor points to any evidence, beyond his own conclusory and speculative assertions, that his guilty plea resulted from trial counsel's coercion. Conclusory allegations are insufficient proof to warrant federal habeas corpus relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012

(5th Cir. 1983)); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). Because he has not shown deficient performance or actual prejudice, Carter fails to demonstrate ineffective assistance. Carter has not shown that the state court's rejection of his claims was unreasonable under the doubly deferential standard of review.

Carter next contends that his trial counsel failed to investigate the details of his case and failed to file pretrial motions. The record shows that counsel's performance did not interfere with Carter's ability to understand the nature of the charges against him and the consequences of his plea. A voluntary guilty plea waives non-jurisdictional defects preceding the plea. *See United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008); *Gardner v. Wainwright*, 433 F.2d 137, 139 (5th Cir. 1970) (citations omitted); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). This includes claims for ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Because Carter's claims that trial counsel failed to investigate and failed to file pretrial motions do not relate to the voluntariness of his guilty plea, they are waived and cannot form a basis for federal habeas relief.

In his remaining ground for relief, Carter contends that the trial court erred by failing to inquire into the "potential conflict of interest" of trial counsel after Carter filed a motion to dismiss counsel. Carter raised this claim of trial-court error in a self-represented brief on direct appeal after

counsel filed an *Anders*[1] brief. The Fourteenth Court of Appeals reviewed and rejected Carter's claim, finding that his appeal was wholly frivolous. Because the Texas Court of Criminal Appeals denied relief without a written order, this court considers the intermediate appellate court's decision as "the last reasoned opinion" on Carter's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991) (federal courts "look through" an unexplained state court denial to evaluate the last reasoned state-court decision).

Carter has presented no credible evidence that his trial counsel provided deficient representation due to an actual conflict or prejudiced Carter. His conclusory allegation that his motion to dismiss counsel created a potential conflict of interest is unsupported by the record and is insufficient to support his claim that the trial court had a duty to inquire. *See Fields*, 483 F.3d at 353 ("The Supreme Court has stated that merely a 'vague, unspecified possibility of conflict' does not trigger a duty to inquire."). Because Carter fails to establish that trial counsel had an actual conflict that adversely affected performance, Carter cannot demonstrate that the trial court abused its discretion by failing to inquire into a potential conflict of interest. Based on this record, Carter has not shown that the state court's decision rejecting the claim of trial-court error was contrary to, or involved an unreasonable application of, clearly established federal law.

## IV.    Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 14), is granted; Carter's petition for a writ of habeas corpus, (Docket Entry No. 1), is denied, and this case is dismissed with prejudice. Any remaining pending motions are denied as moot.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny

---

[1]    *Anders v. California*, 386 U.S. 738 (1967).

a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). When relief is denied based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

This court concludes that jurists of reason would not debate the procedural rulings in this case or debate whether Carter stated a valid claim for relief. A certificate of appealability will not issue.

SIGNED on February 26, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge